I am Dana Cephas representing James Coe. Your Honors, I stand here before you today in what is a court of law. Your Honors are not asking me to consider this a court of law. It is one. If Mr. Coe and the government had agreed to mediate this case before Judge Judy in but no one would be fooled into believing it was a court of law. The same argument applies with the Hong Kong extradition agreement. That agreement is not a treaty. Wait a minute. You can spend all your time arguing about the agreement, but you know we have a case that already says, A, it's constitutional, B, it's binding. I understand that, Your Honor. And we're not going to overturn that case. I understand that, Your Honor. However, I believe it's important for me to make a few points about the case before I move on to the bail issue. When President Clinton presented the Hong Kong extradition agreement to the Senate, he clearly stated this is to be considered a treaty. If it was a treaty, he would have said it. He knew it wasn't a treaty. Everyone knew it wasn't a treaty. He could have said, and he would have said, this is a treaty. He didn't say that because he knew it wasn't a treaty. Now, the course that Your Honor referred to, the Wayne case, essentially held that the President could enter into treaties with sub-sovereign entities. The problem with the Wayne case is that it effectively overrules and holds unconstitutional the 1871 Indian Treaty Act because, as this Court knows, Congress cannot take away powers that are vested in the Constitution without amending the Constitution. And what the Congress did, and the President approved in 1871, is to agree that with respect to the Indian tribes, he could no longer use his treaty powers to enter into a treaty because the Indian tribes were sub-sovereign. If the President had the authority under the Constitution to enter into treaties with sub-sovereign entities, then the 1871 Act is unconstitutional. And that is what the holding of Wang would require. And that is why I submit to you that Wang is wrong. Okay, but you understand that this panel has no authority to overturn Wang? Yes, Your Honor. What I gather you're hoping we do would be to ask the Court to take the case in bank because the Court could overrule it. And that We've got your brief, and I think all the points you want to make are there, aren't they? Ultimately, that is my client's intention, and we will almost certainly request en banc review of this case. And I am not sure what the status of the Wang case will be. One last point. Under the holding of the Wang case, the President and the Senate could enter into a treaty with any group of individuals. The President could consider the Ninth Circuit to be a sub-sovereign entity and enter into a treaty with the judges of the Ninth Circuit. Don't weaken your position. Well, Your Honor, that is That's not the argument you want to make. You want to make the argument you've made basically that Hong Kong is whatever you want to argue that it is. But when you take it to the next step, then I think you weaken your position because I apologize. Nobody would say, no court would say that. Well, let's consider Paris then, Your Honor. I think it's understood, or it's my understanding that some countries will not extradite individuals to the United States if they're facing a death penalty. And the President could not get around France's refusal to extradite people by entering into a treaty with Paris, with the mayor of Paris, because the mayor of Paris may be a right-wing individual who is more willing to ignore the rules of the country. He's probably a left-wing individual if that's the case. Perhaps. Your Honor, I will not make any further comments. I certainly don't think we should designate him as being either right or left. I am not sure whether that refers to the bank of the river over in Paris or not. In any event, it's sort of irrelevant. Your Honor, with respect to the bail argument, the government essentially contends that Section 3184 does not permit bail in an extradition case. That is not the case. Section 3184 simply provides that someone will be sent to jail. Section 3184 does not say that if a prisoner needs medical care, needs to be hospitalized, that he or she cannot be sent to a hospital. It does not say he or she cannot be allowed to be released on bail. And several courts have allowed bail after certification. This is a case that Mr. Coe has satisfied what the courts have described as a special circumstance because of his health, his age, the extent of time he's in custody. However, there is no special circumstance. The Supreme Court never said that bail in an extradition case can only be permitted if there are special circumstances. In the Salerno case, the Supreme Court noted that bail could be permitted when there were or you shouldn't have bail unless there are special circumstances. They did not mean to establish a special circumstance for the normal bail case, nor did they try to establish a special circumstance in this case. And so the fact that several courts have used language from Hankel v. Wright to assume there's a special circumstance to this test does not mean there is one. Moreover, such a test would violate due process. The way the special circumstance test has been applied is that if you are not a flight risk, if you are not a danger, you still cannot have bail unless there are some special circumstances. Well, what are those? We know what the governmental interest is in extradition. It's making sure the government can comply with its treaty obligations by presenting the body to the other country. Well, several countries permit persons to be released on bail pending extradition. The case of Enri extradition of Morales indicated that South Africa permits persons to be out on bail pending extradition. What does that have to do with our law, though? Well, what it has to do is with the notion of this international Right. But if we're obligated to turn to produce a person within the United States to another country, and it is in our interest to ensure that having once secured somebody and having certified that there's probable cause and that the Secretary of State is satisfied that the other country will meet all their obligations, then, of course, it would be greatly embarrassing to the United States not to be able to produce somebody at the last minute because somebody had skipped out. So if our interest, then, is ensuring that this person is turned over to the country at the appropriate time, then we may or may not choose to let them have bail. But I don't understand why the fact that South Africa allows people out on bail has anything to do with our practices. Well, Your Honor, you just noted it is important to make sure we satisfy our obligations. And if this court, if all the courts are convinced that the person is not a flight risk, then that obligation is satisfied. And that is the case we have here. As a matter of the due process clause or as a matter of the bail clause? Well, I would say as a matter of both because due process would be violated if we were to hold that if we are 100 percent guaranteed this individual will be here, but we are just going to throw him in jail anyway because we have the power to do that. But you're saying that he has a right, he has a right to bail under the due process clause? Yes. Then why do we have an excessive bail clause? Why don't we just figure all of that out under the due process clause? Why do we have two separate clauses? Well, Your Honor, this court held we can deny bail in certain circumstances, but due process has to be applied to those circumstances. And what process was Mr. Coe not given here? Well, Mr. Coe was not given. He was given quite a bit of process here, wasn't he, Counsel? Excuse me, Your Honor? He was given lots of process here, wasn't he? He just wasn't given bail. Well, I would suggest he hasn't been given any substantive due process. Okay. So this is a substantive due process argument that under the due process clause that someone who is awaiting extradition is entitled to bail. Is that your argument? My argument is he is entitled to bail unless there are compelling governmental interests that preclude bail. And where does the compelling governmental interest test come? Doesn't that stand in contrast to the Supreme Court's decision that somebody ought to be held unless there are special circumstances that would compel us to issue bail? You've completely flipped the language in the Supreme Court's decisions, it seems to me, Counsel. Well, Your Honor, I — You've completely flipped the presumption. The presumption, according to you, as I just heard you, is that we are presumed to give him bail unless the government has compelling circumstances not to give him bail. Well, that was not what I meant to say, Your Honor. What I meant is that due process requires that the petitioner be permitted to ask for bail and be considered for bail. However, bail should not be granted unless he is not a flight risk, not a danger. And that — I'm sorry. You said bail should not be granted unless he's a flight risk, or the bail should be granted unless he's a flight risk. Well, bail should be granted. Okay. So you again have flipped the presumption. The presumption is now in favor of bail. Well, Your Honor, I'm not — That just seems contrary to the whole statutory scheme and to our practices. Your Honor, I'm not saying bail is a presumption. What I'm saying is in the request for bail, if the petitioner demonstrates that he is not a flight risk, that he is not a danger, then the court should allow him out on bail. And that is how the bail procedures work. Why? Since nobody can ever prove 100% he's not a flight risk. The only way we know he's not a flight risk is by keeping him in jail. And last time he fled, I think it was in 1990 from Hong Kong, and they didn't even find him until 2002? That is not correct, Your Honor. I thought that he was picked up here in 2002. He was, but — Didn't he leave Hong Kong in 1990? He left Hong Kong in 1990 to obtain medical treatment in the United States. He was never hiding. He was living open and notoriously under his own name. He, in fact, sent letters to the People's Republic of China in the year 2002, which is how this whole thing started. Right, but he didn't — he did skip out on Hong Kong in 1990, didn't he? That is correct. Okay. I mean, that sounds like a pretty good flight risk. It seems to me that even on the merits, if you ever got to the merits, that this would be a pretty difficult case, wouldn't it? Well, I would submit that it is not, Your Honor, because Mr. Koh was granted bail in this case, and he was on bail for 14 months. And he abided by all the terms of his bail conditions. He reported regularly, and pretrial services said that he was not a flight risk, he was not a danger, and they were not opposed to continuing him on bail. What happened is the government came in after the extradition request was certified and said, everything's changed, he has to have his bail revoked, despite the fact that for 14 months he was there, he hadn't fled, there was no indication he was going to flee. And the situation from 1990 is different from today in many respects, especially in light of my client's additional age and his health conditions. You know, I think everybody understands that the difference between being out on bail before, for example, conviction, and being out on bail after conviction is rather broad. I believe even for normal, in normal criminal cases, the presumptions and the rules flip pre- and post-conviction. This fellow is pre-extradition certification and post, not the same exactly as the conviction, I understand. But the last thing the rule he wants to do is be sent back to Hong Kong to face the charges against him, obviously. Well, Your Honor, there is an individual who clearly seemed to be guilty in this case. She was convicted and got an 18-month suspended sentence. That was one of the reasons early on that Judge Cooper granted bail, because I believe she found that one of the special circumstances was that even if he did go to Hong Kong, he didn't likely face severe punishment. Right, and that's why he's going to fight, bleed, and die not to go back to Hong Kong and face the charges that he skipped bail on, correct? That's the reason. Because he thinks, no harm, no foul, I might as well just get them over with. Is that what you're saying? No. It's no big deal, right? I'm not saying it's not a big deal. That's why we're here today. Of course. To protect that. But for approximately a month after the certification decision, Mr. Koh was still out on bail. If there was this huge fear that it's over, I've lost, he could have fled during that month. But he did not. When we went before Judge Pragerson to ask him to reverse the magistrate's order revoking, he knew that his bail was going to be revoked and he was going into custody. Judge Pragerson did not say, marshals, take him into custody. Judge Pragerson allowed him to remain out another day. Again, Mr. Koh could have fled. There is no suggestion in the record, the government has not even argued, that Mr. Koh is a flight risk. And therefore, to deny bail to someone when the governmental interest in producing him to Hong Kong is satisfied, is a denial of due process. And the Supreme Court in Henkel never said you can only have bail and extradition cases if there are certain special circumstances. So I would ask the court to find that the special circumstance test is unconstitutional. And I would also ask this court to hold that even if the special circumstance test is not unconstitutional, that it has been satisfied in this case and that Mr. Koh should be permitted bail in this case. And I would like to reserve two minutes. Thank you, Mr. Stephens. I'm going to reserve that time. Ms. Hines? Thank you, Your Honors. May it please the court, Judith Hines on behalf of the United States. I am not going to discuss the treaty issue because this court has decided that. And when you see this, I will simply address the bail issue. The bail issue before this court is very narrow. It is whether the district court erred in denying bail where extradition had already been certified and concurrently with the denial of that bail, the district court was also denying the petition for habeas corpus. We also, I would suggest, Your Honors, have an added layer on that now because the Ninth Circuit has ruled on the merits in this case, has ruled that the underlying treaty is constitutional and valid. In addition here, the district court who denied the bail was well aware because it said so in its order denying the habeas corpus petition. The district court was well aware that Mr. Koh had jumped bail in Hong Kong in 1990. And in the one hearing, there actually were, Mr. Koh brought two bail motions in the district court. In one, in the first one, the district court had a hearing. And the district court in that hearing described its considerations. And it described how it had often had bail hearings, and in those bail hearings, in a domestic criminal case, it had a sense of what the downside was if the criminal defendant jumped bail. It was able to consider those ramifications. So the district court here was well aware, as this Court has already pointed out, that there is no 100 percent guarantee of lack of flight risk other than incarceration. So that even though there may have been some mitigating circumstances, which, had this been a criminal case, might have changed the calculus of bail, here there's no 100 percent guarantee of lack of flight risk, and we had an extraditee who had already jumped bail, and the district court had before it an extraditee who had already been certified, and for whom the district court was going to deny, was denying the petition for rid of habeas corpus. Therefore, it was proper for the district court to look at the flight risk in those terms. And the district court then balanced that and properly decided that the government's interests here were sufficiently high that bail should not be granted. Now, the government has argued in its papers that the extraditee, while not addressing the extradition statute, did decide in a post-certification posture, did apply the special circumstances test, and did ultimately uphold a district court's decision not to deny bail, but did apply a special circumstances test in the post-certification posture. However, the Salerno decision, this Court's Salerno decision, does not discuss, and there is no indication in that decision that the government ever argued, that the extradition statute itself precludes bail in the post-certification posture. However, the government does make that argument here based on the plain language of the extradition statute, and as that language is noted and acknowledged in the Wright v. Hankel case. Wright v. Hankel, as the government has argued in its papers, is a pre-certification case. The special that is applied for certification comes from that case, and this Court has consistently noted that the special circumstances test that is applied in a pre-certification extradition case comes from that case. And this Court, as well as every other court of appeals throughout the United States, has consistently applied that standard. Do Your Honors have any specific questions? I don't have any questions. At this time. If Your Honors don't have any questions, then I'm going to submit on the briefs, I think, at this point. Thank you, counsel. Mr. Stiefel. Thank you, Your Honor. Your Honor, the Ninth Circuit has not held that bail cannot be permitted post-certification. That is what the government is asking the Court to do today. The statute that is at the basis of this discussion does not discuss bail. It does not preclude bail on its face. The government interprets it that way, but the statute is silent, and this Court should not read into that. Now, Mr. Code has never been deemed a flight risk by any of the courts that have considered his request for bail. The government hasn't argued that he's a flight risk. The governmental interests are satisfied by releasing him on bail because he is not a flight risk. He is not going to go anywhere. Counsel, what's our standard for reviewing the District Court's decision to turn down bail here? Abuse of discretion? Discretion. However, Your Honor, the District Court seemed to apply the wrong standard, and I believe they did abuse discretion because the Court agreed or seemed to agree that there is no flight risk, there is no statute. Applying the wrong standard would really not be abuse of discretion. That should be a matter of law, wouldn't it? That would simply be abuse of discretion. Well, Your Honor, I believe there is an abuse of discretion and an error of law. Did he commit an error of law, or did he just abuse his discretion? Well, Your Honor, I believe he abused his discretion by denying the bail in this situation where there was no flight risk and there was no danger, and also mistakenly assumed that the law did not permit bail in the post-extradition certification context. Therefore, I would ask this Court to reverse the District Court and allow bail. And finally, I note that the government has filed a motion I received on Friday asking the Court to lift the stay, and I would ask the Court to keep the stay imposed so that Mr. Koh may submit a request for en banc consideration. You know, that may not be a basis for continuing the stay, but you've made the recommendation and we'll certainly consider it for what it's worth. But, you see, you know why the stay was granted. At the time the stay was granted, we didn't have one case that we now have. The case is there, but this was already set for argument, so we left it. I understand, Your Honor. However, if Mr. Koh is extradited, his remedies have been effectively taken away if this case is eventually, if the Wang case is eventually reversed. Thank you, Your Honors. Okay. Thank you, Counsel. We appreciate the arguments today, and the Court will stand adjourned until tomorrow morning.
judges: Farris, Fernandez, Bybee